# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JAMES S. NOLAND,

       Plaintiff,

vs.                                          No. CIV 08-0056 JB/LFG

CITY OF ALBUQUERQUE; BERNALILLO COUNTY
BOARD OF COMMISSIONERS; BERNALILLO COUNTY
METROPOLITAN DETENTION CENTER; Bernalillo
County Metropolitan Detention Center Administrator
HARRY TIPTON, in his individual and official capacities;
Bernalillo County Metropolitan Detention Center
Administrator MIKE SISNEROS, in his individual and
official capacities; Bernalillo County Metropolitan Detention
Center Administrator RONALD TORRES, in his individual
and official capacities; Bernalillo County Metropolitan
Detention Center Administrator HENRY PEREA, in his
individual and official capacities; Bernalillo County
Metropolitan Detention Center Administrator DONALD
CRUTCHFIELD, in his individual and official capacities;
Bernalillo County Metropolitan Detention Center
Administrator MATT CANDELARIA, in his individual and
official capacities; Bernalillo County Metropolitan Detention
Center Administrator JUAN CHACON, in his individual and
official capacities; Bernalillo County Metropolitan Detention
Center Administrator MATT ELWELL, in his individual and
official capacities; Bernalillo County Metropolitan Detention
Center Administrator PAUL SALCIDO, in his individual and
official capacities; Bernalillo County Metropolitan Detention
Center Administrator ERIN WORSHAM, in her individual
and official capacities; Bernalillo County Metropolitan
Detention Center Correctional Officer DANNY SISNEROS,
in his individual and official capacities; Bernalillo County
Metropolitan Detention Center Correctional Officer ERNEST
WICKHAM, in his individual and official capacities;
Bernalillo County Metropolitan Detention Center
Correctional Officer JOSE HERNANDEZ, in his individual
and official capacities,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Consolidated Pretrial Order, filed March 24, 2011 (Doc. 141)("PTO"); (ii) the Court's Minute Order, filed March 22, 2011 (Doc. 140); (iii) the Brief of Defendants City of Albuquerque, Harry Tipton, Donald Crutchfield and Ernest Wickham Concerning the Defense of Failure to Exhaust Administrative Remedies, filed March 24, 2011 (Doc. 142)("Trial Brief"); and (iv) Plaintiff [sic] Response to the Brief of Defendants of the City of Albuquerque, Harry Tipton, Donald Crutchfield and Ernest Wickham Concerning the Defnse [sic] of Failure to Exhaust Administrative Remedies, filed March 28, 2011 (Doc. 145). The Court held a hearing on March 25, 2011. The primary issue is whether Plaintiff James S. Noland has exhausted his administrative remedies for his claims for racial discrimination, religious discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17. The Court finds that Noland has exhausted his administrative remedies for his racial discrimination, religious discrimination, hostile work environment, and retaliation claims, because, given that Noland checked boxes in the Charge of Discrimination, filed March 24, 2011 (Doc. 142-1)("EEOC Charge") for race, color, religion, and retaliation discrimination, given that Noland stated, in the text of the EEOC Charge, that he was subjected to a hostile work environment, and given the factual allegations in the EEOC Charge, an administrative investigation of Noland's hostile work environment, racial discrimination, religious discrimination, and retaliation claims could reasonably be expected to follow the charge of discrimination.

## FACTUAL BACKGROUND

On February 21, 2007, Noland filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission. See Doc. 142-1. In the EEOC Charge, there is a section

entitled "Discrimination Based On." EEOC Charge at 1. In this section, there are boxes for race, color, sex, religion, national origin, retaliation, age, disability, and other. Noland checked the boxes for race, color, religion, and retaliation. See EEOC Charge at 1. There is also a section in the EEOC charge labeled "Date(s) Discrimination Took Place." EEOC Charge at 1. In this section, Noland entered June 8, 2006 to June 8, 2006. In this section, there is also a box labeled continuing action. Noland did not check this box. In the narrative section of the EEOC Charge, Noland stated:

> I was hired in October 2004 and my most recent position was Case Manager/Specialist. During my employment at the Detention Center I have been subject to a hostile work environment. Additionally, on or about June 8, 2006, I was placed on Administrative Leave and informed it was to investigate a confrontation with a coworker. I believe an investigation was never conducted. The confrontation we had was only "words" and I know of others who have come to fisticuffs [sic] who have been sent to mediation and not placed on Administrative Leave. In addition, the city of Albuquerque passed along information to Bernalillo County which prevented me from getting hired when the Detention Center was placed under the management of the County. During my employment with the City of Albuquerque, I complained verbally to supervisors about discriminatory and racist comments such as references to the "cotton fields" and asking me if I'm Muslim or a member of the Taliban, which were made to me by coworkers.
>
> I believe I was discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, because of my race (Black), color, religion, and in retaliation because I complained about discrimination in the workplace.

EEOC Charge at 1.

## PROCEDURAL BACKGROUND

Noland filed his Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 on January 15, 2008. See Doc. 1. On March 31, 2008, Noland filed his Amended Civil Rights Complaint. See Doc. 4 ("Amended Complaint"). In his Amended Complaint, Noland alleges claims of discrimination based on his race and ethnicity, discrimination based on his religious affiliation, harassment, threats, and intimidation, retaliation or reprisal, equal protection, due process, and wrongful termination. See Amended Complaint at 4.

-3-

As the Court previously recognized in this case, "nepotism, even unfair nepotism, does not raise an inference of pretext or racial discrimination. . . .  Title VII only prohibits discrimination on the basis of certain, invidious factors.  Employers are free to terminate at-will employees for any other reason . . . -- so long as it is not unlawful."  Magistrate Judge's Findings and Recommended Disposition at 18, filed July 12, 2010 (Doc. 103).  Noland did not object to these findings, and the Court adopted the Magistrate Judge's Findings and Recommended Disposition.  See Plaintiff's Written Objections to Magistrate Judge's Findings and Recommended Disposition, filed August 5, 2010 (Doc. 107); Order Adopting Magistrate Judge's Findings and Recommended Disposition and Dismissing All Claims Against County Defendants, filed September 22, 2010 (Doc. 110).  In Neal v. Roche, 349 F.3d 1246 (10th Cir. 2003), the United States Court of Appeals for the Tenth Circuit referred to the "'friendship' and 'nepotism' cases," noting:

> These cases hold that an employer's actions based on loyalty to a friend or relative . . . are not considered "discriminatory," even where they benefit the nonprotected friend or relative at the expense of a more qualified, protected person. *See, e.g.*, . . . Foster v. Dalton, 71 F.3d 52, 54, 56 (1st Cir. 1995) (upholding, against Title VII challenge, supervisor's decision to alter job description to favor his "fishing buddy" over generally more qualified black female applicant, because "Title VII does not outlaw cronyism") . . . .

349 F.3d at 1251.  Indeed, the Tenth Circuit continued, employers are free to use whatever criteria they want in hiring or firing, even criteria that are "unfair" or reprehensible, so long as they are not discriminatory.  Personal or political favoritism, even a grudge, may account for an employment decision without giving rise to a discrimination case.  349 F.2d at 1252.

On January 24, 2011, the City Defendants filed their Pretrial Order without Noland's input.  On March 9, 2011, the parties submitted their Consolidated Pretrial Order ("PTO").  In their PTO, the City Defendants added two statements: (i) "Plaintiff has failed to exhaust administrative remedies for claims concerning conduct predating the conduct complained of in his EEOC

complaint that gave rise to this lawsuit," PTO at 4 (Defendants defenses), filed March 9, 2011 (Doc. 137); and (ii) "Plaintiff  has failed to exhaust his administrative remedies for claims concerning conduct that predated the conduct complained of in the EEOC complaint that gave rise to this lawsuit," PTO at 7(Defendants Contentions).  These statements caught the Court's attention, because the Court was concerned that these statements might go to its jurisdiction to hear some or all of the case.  On March 22, 2011, the Court sent a minute order notifying the parties

> that the Defendants must file a brief within 3 calendar days . . . explaining in full their defense that the "Plaintiff has failed to exhaust administrative remedies for claims concerning conduct predating the conduct complained of in his EEOC complaint that gave rise to this lawsuit," and the contention that the "Plaintiff has failed to exhaust his administrative remedies for claims concerning conduct that predated the conduct complained of in the EEOC complaint that gave rise to this lawsuit."

Minute Order, filed March 22, 2011 (Doc. 140)(citations omitted).

On March 24, 2011, Defendants City of Albuquerque, Harry Tipton, Donald Crutchfield, and Ernest Wickham (hereinafter "the City Defendants"), filed the Brief of Defendants City of Albuquerque, Harry Tipton, Donald Crutchfield and Ernest Wickham Concerning the Defense of Failure to Exhaust Administrative Remedies.  See Doc. 142.  In their brief, the City Defendants argue that Noland's "EEOC complaint is only a claim of retaliation for being placed on administrative leave and for the City's passing 'information to Bernalillo County, which prevented [him] from getting hired when the Detention Center was placed under the management of the County.'"  Trial Brief at 3 (citing EEOC Charge at 1).  The City Defendants state that, because the only date given for discrimination in the EEOC Charge is June 8, 2006, Noland's statement that he complained verbally of previous discriminatory comments by co-workers "demonstrates his protected activity and his allegedly related retaliation[,] [b]ut the comments themselves are not the basis for a 'discrete' claim of hostile work environment."  Trial Brief at 3.  The City Defendants

argue that the only exhausted claim in Noland's EEOC complaint is for retaliation.  The City Defendants also argue that Noland failed to exhaust his administrative remedies concerning his claim that Crutchfield's inaction in response to his claims of nepotism is a violation of Title VII, because nothing in his EEOC complaint remotely addresses Crutchfield's alleged conduct.

On March 28, 2011, Noland filed the Plaintiff [sic] Response to the Brief of Defendants of the City of Albuquerque, Harry Tipton, Donald Crutchfield and Ernest Wickham Concerning the Defnse [sic] of Failure to Exhaust Administrative Remedies.  See Doc. 145 ("Response").  In his Response, Noland states that he filed a timely complaint with the EEOC, dated February 21, 2007, alleging that "he had been discriminated against by his employer city of Albuquerque, on the basis of his race, color and religion and retaliated against for engaging in protected activity in violation" of Title VII.  Response at 1.  Noland alleges that he checked boxes on the EEOC Charge in the areas of discrimination based on race, color, religion, and retaliation.  He alleges that, in the EEOC complaint, he alleged that, during his employment at the detention center, he was subjected to a hostile work environment.  The rest of Noland's response is devoted to citing passages of Straub v. Proctor Hospital, 131 S. Ct. 1186 (2011), and Kasten v. Saint-Gobain Performance Plastics Corp., No. 09-834, 2011 WL 977061 (U.S. Mar. 22, 2011).  In Kasten v. Saint-Gobain Performance Plastics Corp., the Supreme Court of the United States addressed whether the term "filed any complaint," contained in the antiretaliation provision in the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 through 219, included oral as well as written complaints, and concluded that it did. See 2011 WL 977061, at *2.  In Staub v. Proctor Hospital, the Supreme Court considered "the circumstances under which an employer may be held liable for employment discrimination based on the discriminatory animus of an employee who influenced, but did not make, the ultimate employment decision."  131 S. Ct. at 1189.  The Supreme Court held "that if a supervisor performs

an act motivated by antimilitary animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under" the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4331.  131 S. Ct. at 1194 (footnote omitted).

## LAW REGARDING EXHAUSTION OF ADMINISTRATIVE REMEDIES

Title VII claims must be administratively exhausted before being brought in federal court. See Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304, 1317 (10th Cir. 2005)("It is well-established that Title VII requires a plaintiff to exhaust his or her administrative remedies before filing suit." (citations omitted)).  "Exhaustion of administrative remedies is a 'jurisdictional prerequisite' to suit under Title VII." Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996)(citation omitted).  Exhaustion of administrative remedies is central to Title VII's statutory scheme, because it provides the EEOC and state deferral agencies with the first opportunity to investigate discriminatory practices, and enables them to perform their roles of obtaining voluntary compliance and of promoting conciliatory efforts.  See Patterson v. McLean Credit Union, 491 U.S. 164, 180-181 (1989); Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994).

1.    **Title VII.**

Title VII prohibits an employer from "fail[ing] or refus[ing] to hire or . . . discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  "Under long-standing [Tenth] [C]ircuit precedent, supervisors and other employees may not be held personally liable under Title VII." Williams v. W.D. Sports, N.M., Inc., 497 F.3d 1079, 1083 n.9 (10th Cir. 2007).  See Haynes v. Williams, 88 F.3d 898, 899 (10th Cir. 1996)("The relief granted under Title VII is against the

employer, not individual employees whose actions would constitute a violation of the Act.").

2.      **The Filing Time Limit.**

To exhaust administrative remedies, an individual claimant must: (i) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge; and (ii) receive notice of the right to sue.  See Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999); 42 U.S.C. §§ 2000e-5(b), (c), (e), (f)(1).  To be timely, a plaintiff must file the charge with the EEOC within 180 days or with a state agency within 300 days of the complained-of conduct.  See Simms v. Okla. ex. rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d at 1327; Gunnell v. Utah Valley St. Coll., 152 F.3d 1253, 1260 n.3 (10th Cir. 1998); 42 U.S.C. § 2000e-5(e)(1); 29 C.F.R. § 1601.13 (1998).  "In states in which a state agency has authority to investigate employment discrimination ('deferral states'), Title VII requires claimants to file a charge of discrimination within 300 days of the alleged unlawful employment practice."  Davidson v. Am. Online, Inc., 337 F.3d 1179, 1183 n.1 (10th Cir. 2003)(citing 42 U.S.C. § 2000e-5(e)(1)).

After first timely filing a charge of discrimination with the EEOC setting forth the facts and nature of the charge, the plaintiff must next receive notice of the right to sue.  See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d at 1326; 42 U.S.C. § 2000e-5(b), (c), (e), (f)(1).  "[A] plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter."  Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d at 1321.  Once an individual receives notice of the right to sue, he or she has ninety days in which to file suit. See 42 U.S.C. § 2000e-5(f)(1).

**3.**     **The Exhaustion of Administrative Remedies Is a Jurisdictional Requirement.**

Filing a charge of discrimination with the EEOC is a jurisdictional prerequisite to the institution of a lawsuit based on a claim of employment discrimination under Title VII. See Alcivar v. Wynne, 268 F. App'x 749, 753 (10th Cir. 2008)("The Tenth Circuit has consistently held that 'exhaustion . . . is a jurisdictional prerequisite to suit under Title VII -- not merely a condition precedent to suit.'")(quoting Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304, 1317 (10th Cir. 2005)); Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996)("Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII."). Without such a filing, federal courts lack subject-matter jurisdiction to entertain discrimination claims under that statutes. See Faragalla v. Douglas County Sch. Dist. RE 1, Nos. 09-1393, 10-1433, 2011 WL 94540, at *16 (10th Cir. Jan. 12, 2011)("We conclude the district court did not err in dismissing Ms. Faragalla's Title VII claim against DCFCE for lack of subject matter jurisdiction based on her failure to exhaust administrative remedies.").[1]

---

[1] The Tenth Circuit has mentioned some concern whether failure to exhaust administrative remedies is still a jurisdictional prerequisite to suit after the Supreme Court's decision in Jones v. Bock, 549 U.S. 199 (2007). See, e.g., Alcivar v. Wynne, 268 F. App'x at 753 (noting that "Jones v. Bock held that under the PLRA [Prison Litigation Reform Act] exhaustion is an affirmative defense to be raised by the defendant and not a jurisdictional pleading requirement," but finding it was "not . . . necessary to decide whether exhaustion is jurisdictional under Title VII after Jones."); McQueen v. Colo. Springs Sch. Dist. No. 11, 488 F.3d 868, 874 (10th Cir. 2007)("Although courts have repeatedly referred to the exhaustion requirement as *jurisdictional*, . . . recent Supreme Court jurisprudence in other contexts casts doubt on that characterization . . . .")(citations omitted, emphasis in original). Neither party in this case argues that, in the Tenth Circuit, administrative exhaustion is not still a jurisdictional prerequisite. Moreover, a recent unpublished Tenth Circuit decision indicates that Jones v. Bock did not demote the exhaustion requirement from a jurisdictional prerequisite to an affirmative defense, at least in the Title VII context. See Martinez v. Target Corp., No. 09-2112, 2010 WL 2616651, at *3 n.2 (10th Cir. July 1, 2010)(slip op.)(Kelly, Porfilio, O'Brien, JJ.)("Martinez is not proceeding under the PLRA; Bock is inapposite. She does not point us to a single decision -- of this or any other court -- applying Bock in the context of a Title VII or ADEA case.").

4.      **The Scope of the EEOC Charge.**

"A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC."  MacKenzie v. City & County of Denver, 414 F.3d 1266, 1274 (10th Cir. 2005).  "We liberally construe charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim."  Jones v. United Parcel Serv., Inc., 502 F.3d at 1186.  "This more lenient pleading standard contemplates the fact that administrative charges of unlawful employment practices are regularly filled out by employees who do not have the benefit of counsel."  Mitchell v. City of Wichita, 112 F. App'x 662, 667 (10th Cir. 2005).  "[T]he charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim."  Jones v. United Parcel Serv., Inc., 502 F.3d at 1186.  "The failure to mark a particular box creates a presumption that the charging party is not asserting claims represented by that box."  Jones v. United Parcel Serv., Inc., 502 F.3d at 1186 (citing Gunnell v. Utah Valley State College, 152 F.3d 1253, 1260 (10th Cir. 1998)).  "The presumption may be rebutted, however, if the text of the charge clearly sets forth the basis of the claim."  Jones v. United Parcel Service, Inc., 502 F.3d at 1186.

Liberally construing EEOC complaints requires courts to look beyond the formalities of the complaint form.  The Tenth Circuit held in Jones v. United Parcel Service, Inc. that, while Jones checked "no" to the questions, "[d]o you believe that the employer regarded you as disabled?" and "did you advise you employer that you required an accommodation?", Jones' allegations that UPS interfered with a medical evaluation to ensure Jones was not released to return to work, that UPS did not permit Jones to return to work despite releases from two doctors, and that Jones checked a box for retaliation, should have triggered an administrative investigation into whether UPS discriminated against Jones because he was disabled and whether UPS retaliated against him.  502

F.3d at 1182, 1186-87.  Because Jones checked "no" in response to the question whether he advised his employer he needed accommodation and because the text of the charge did not contain facts that would prompt an investigation of such a claim, the Tenth Circuit held that Jones did not exhaust his administrative remedies with respect to his failure-to-accommodate claim.  502 F.3d at 1187.

In Duncan v. Manager Department of Safety, 397 F.3d 1300 (10th Cir. 2005), a former police officer filed an EEOC charge against the city on April 14, 1998 and checked the box for retaliation.  See 397 F.3d at 1314.  The officer alleged a series of acts before the date the EEOC charge was filed that were supposedly in retaliation for her use of the complaint process.  See 397 F.3d at 1314.  The Tenth Circuit held that none of the actions the officer alleged in her EEOC charge were sufficient to support a retaliation claim.  See 397 F.3d at 1314.  The Tenth Circuit noted that the allegation in her complaint that in August of 1998 -- months after filing her EEOC complaint -- she was transferred to the police academy in retaliation for filing her original EEOC charge was severe enough to support a retaliation claim.  See 397 F.3d at 1314.  The Tenth Circuit noted, however, that, because the officer did not file an additional EEOC charge alleging that specific retaliatory act, she did not exhaust her administrative remedies and thus the district court correctly dismissed her claim for retaliation.  See 397 F.3d at 1314.

In Annett v. University of Kansas, 371 F.3d 1233 (10th Cir. 2003), the Tenth Circuit declined to consider Annett's contention that receiving the position of adjunct lecturer versus adjunct professor constituted a retaliation action, because she failed to exhaust her administrative remedies.  See 371 F.3d at 1238.  The Tenth Circuit considered Annett's charge of discrimination filed September 6, 2000 and her "complaint narrative" submitted on May 31, 2000, and found no reference to a distinction between "lecturer" and "professor" as probative of discrimination or retaliation.  371 F.3d at 1238.  Annett's complaint stated: "I was given an Adjunct faculty position,

-11-

but no Principal Investigator status, which prevents me from obtaining grants." 371 F.3d at 1238.

Annett's complaint narrative stated: "My own position as an Adjunct Faculty member at KU was

downgraded to prevent me from submitting grants that could act as an alternative source of income."

371 F.3d at 1238.  The Tenth Circuit held that it could not conclude "that this sentence represents

the distinction between being appointed an adjunct lecturer versus an adjunct professor in 1999 or

2000."  371 F.3d at 1238.  Furthermore, the Tenth Circuit noted that it "lack[ed] jurisdiction to

review Title VII claims that are not part of a timely-filed EEOC charge," including actions that

occurred after the charge was filed.  371 F.3d at 1238 (citing Seymore v. Shawver & Sons, Inc., 111

F.3d  at 799).

> Previously, we would proceed to examine whether the alleged employment action, provided it occurred after the filing of the EEOC charge, was "like or reasonably related to the allegations of the EEOC charge."  However, our recent holding in Martinez v. Potter, has foreclosed this line of inquiry.  In Martinez, we abrogated the continuing violation exception to our jurisdictional requirements to allege a claim of retaliation and held that "unexhausted claims involving discrete employment actions are no longer viable."  In so doing, we relied on National R.R. Passenger Corp. v. Morgan, which concluded that each discrete retaliatory action constitutes its own unlawful employment practice for which administrative remedies must be exhausted, and we applied Morgan to incidents occurring after an employee's filing of an EEO complaint, and we applied Morgan to incidents occurring after an employee's filing of an EEO complaint.

Annett v. Univ. of Kansas, 371 F.3d at 1238 (internal quotations and citations omitted).  Thus, the

Tenth Circuit dismissed Annett's claim for failure to exhaust administrative remedies.

### a.    Each Discrete Incident Must be Exhausted.

Before 2002, under the "continuing violation" theory, the Tenth Circuit recognized a limited

exception to the "exhaustion rule for Title VII claims when the unexhausted claim is for

discrimination like or reasonably related to the allegations of the EEOC charge."  Simms v.

Oklahoma ex. rel. Dep't of Mental Health and Substance Abuse Servs., 165 F.3d at 1327 (internal

citations and quotations omitted).  The Tenth Circuit "construed the 'reasonably related' exception to include most retaliatory acts subsequent to an EEOC filing."  165 F.3d at 1327 (citing Seymore v. Shawyer & Sons, Inc., 111 F.3d at 799).  In Martinez v. Potter, 347 F.3d 1208 (2003), however, the Tenth Circuit noted that the "Supreme Court's recent pronouncement in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), has effected fundamental changes to the doctrine allowing administratively unexhausted claims in Title VII actions."  347 F.3d at 1210.  The Tenth Circuit's "decisions have unambiguously recognized Morgan as rejecting application of the 'continuing violation' theory."  Martinez v. Potter, 347 F.3d at 1211 (citing Davidson v. America Online, Inc., 337 F.3d 1179 (10th Cir.2003)).  The Tenth Circuit stated:

> We agree with the government that such unexhausted claims involving discrete employment actions are no longer viable.  Morgan abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching that each discrete incident of such treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted.

347 F.3d at 1210 (internal citations and quotations omitted).

Thus, under National Railroad Passenger Corp. v. Morgan, each discrete act of discrimination must be administratively exhausted.  "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 114 (internal citations and quotations omitted).  In National Railroad Passenger Corp. v. Morgan, this rule applied to bar a plaintiff from suing on claims for which no administrative remedy had been sought when those incidents complained of occurred more than 300 days before the filing of Plaintiff's EEO complaint.  See Martinez v. Potter, 347 F.3d at 1210.  "The rule is equally applicable, however, to discrete

claims based on incidents occurring after the filing of Plaintiff's EEO complaint."  Martinez v. Potter, 347 F.3d at 1210-11.  The Tenth Circuit has stated: "Our decisions have unambiguously recognized Morgan as rejecting application of the continuing violation theory."  Martinez v. Potter, 347 F.3d at 1211 (internal quotations omitted).  Failing to exhaust administrative remedies does not "bar an employee from using the prior acts as background evidence in support of a timely claim." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 113.

In Jones v. United Parcel Service, the Tenth Circuit explained how the requirement that the plaintiffs must exhaust each discrete claims works in conjunction with courts liberally construing EEOC charges.  See 502 F.3d at 1186.

> The next step in determining whether a plaintiff has exhausted her administrative remedies is to determine the scope of the allegations raised in the EEOC charge because "[a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC. . . . We emphasize, however, that our inquiry is limited to the scope of the administrative investigation that can reasonably be expected to follow from the discriminatory acts alleged in the administrative charge. In other words, the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim; this follows from the rule that "each discrete incident" of alleged discrimination of retaliation "constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted."

Jones v. United Parcel Service, 502 F.3d at 1186 (citations omitted).

This Court has previously held that these principles demand that an act which occurs subsequent to the filing of the formal EEOC charge would not be included in the scope of the administrative investigation and would constitute its own "unlawful employment practice for which administrative remedies must be exhausted."  Farley v. Leavitt, NO. CIV 05-1219 JB/LFC, 2007 WL 6364329, at *14 (D.N.M. Declaratory. 31, 2007)(Browning, J.)(quoting Jones v. United Parcel Serv., Inc., 502 F.3d at 1186)(internal quotation marks omitted).  Tenth Circuit holdings support this

-14-

conclusion.  See Duncan v. Manager Department of Safety, 397 F.3d at 1314 (affirming dismissal of retaliation claim postdating plaintiff's EEO complaint, stating: "Ms. Duncan did not file an additional EEOC charge alleging the retaliatory act however, and this failure to exhaust her administrative remedies is fatal to her claim"); Annett v. University of Kansas, 371 F.3d at 1238 ("Previously, we would proceed to examine whether the alleged employment action, provided it occurred after the filing of the EEOC charge, was 'like or reasonably related to the allegations of the EEOC charge'[;] [h]owever, our recent holding in Martinez v. Potter, has foreclosed this line of inquiry.").

### b.  A Plaintiff Must Exhaust at Least One Related Act that Is the Basis of a Hostile Work Environment Claim.

A different rule applies to hostile environment claims, for which "the continuing violation doctrine remains viable."  Semsroth v. City of Wichita, 304 F. App'x 707, 722 (10th Cir. 2008).  An employer creates a hostile work environment when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Davis v. U.S. Postal Serv., 142 F.3d 1334, 1341 (10th Cir. 1998)(quotations omitted).  Under National Railroad Passenger Corp. v. Morgan, a series of events that constitute a hostile environment claim are considered one unlawful action.  See West v. Norton, 376 F. Supp. 2d 1105, 1129 (D.N.M. 2004)(Browning, J.).  "Hostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 115 (internal citations and quotations omitted).  An "unlawful employment practice" that constitutes a hostile work environment thus cannot be said to occur on any particular day, but rather occurs over a series of days or years. Id. (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)).  Accordingly, so long as one of the

incidents included within the claim of hostile environment occurred within the prescribed time limit, other conduct that occurred outside of the proscribed time period, but contributing to the hostile work environment, is not time barred.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 105 (holding "that consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period"); West v. Norton, 376 F. Supp. 2d at 1129.

In National Railroad Passenger Corp. v. Morgan, the Supreme Court provided three factors courts may consider to determine if "a series of separate acts . . . collectively constitute one 'unlawful employment practice.'" 536 U.S. at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)). "[A] series of alleged events comprises the same hostile environment where 'the pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers.'" Duncan v. Manager, Dep't of Safety, City & Co. of Denver, 397 F.3d at 1309 (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 120)("Morgan advises looking at the type of these acts, the frequency of the acts, and the perpetrator of the acts.").

In National Railroad Passenger Corp. v. Morgan, the Supreme Court addressed whether an EEOC charge alleging that the plaintiff was "consistently harassed and disciplined more harshly than other employees on account of his race" was part of the same hostile work environment claim as "evidence from a number of other employees that managers made racial jokes, performed racially derogatory acts, made negative comments regarding the capacity of blacks to be supervisors, and used various racial epithets." 536 U.S. at 105, 120.  While expressly declining to make a judgment on the merits of the plaintiff's claims, the Supreme Court found it could not say that these were "not part of the same actionable hostile environment claim." 536 U.S. at 121.

In Duncan v. Manager, Dep't of Safety, City & Co. of Denver, the Tenth Circuit addressed a plaintiff's hostile environment claim alleging "three groups of acts that plausibly took place during the filing period: (1) the harassing statements by Sgt. Andrews; (2) the spreading of rumors by Lt. Leone; and (3) the anonymous magazine article placed in her box and the theft of a notebook by an unknown perpetrator."  397 F.3d at 1309.  The Tenth Circuit "examin[ed] the acts in the filing period and determin[ed] what acts outside of the filing period [we]re related by type, frequency, and perpetrator.  The entire range of related acts constitute[d] the hostile work environment underlying Ms. Duncan's claim."  397 F.3d at 1309.  The Tenth Circuit found:

> The alleged actions of Sgt. Andrews and Lt. Leone began after Ms. Duncan returned to District Four in late 1996 and continued into the filing period. These acts are related by type, frequency, and perpetrator, thus all these acts, including those before the beginning of the filing period, are within the scope of Ms. Duncan's hostile work environment claim.  The alleged hostile actions that occurred before Ms. Duncan returned to District Four, however, are not part of the same hostile work environment as those alleged during the filing period. The acts she alleges immediately prior to her return are an anonymous letter threatening physical violence and Chief Michaud's adjustment of her score on the sergeant's exam. While these acts may have a temporal relation to the behavior of Sgt. Andrews and Lt. Leone, they are of a different character, they took place while Ms. Duncan was on a different assignment, and they were not perpetrated by the same people. Even if we draw all inferences in Ms. Duncan's favor, we do not think a rational jury could conclude that any of the allegations before her return to District Four are part of the same hostile work environment as those acts alleged during the filing period.

Duncan v. Manager, Dep't of Safety, City & Co. of Denver,  397 F.3d at 1309.

**5.      Time Requirements for Exhausting Administrative Remedies Are Not Jurisdictional.**

While failure to exhaust administrative remedies is a jurisdictional bar to suit, in Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1982), the Supreme Court held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."

455 U.S. at 393.  See DeWalt v. Meredith Corp., 288 F. App'x 484, 490 (10th Cir. 2008)(citing

Zipes v. Trans World Airlines, Inc., 455 U.S. at 393; Beaird v. Seagate Tech., Inc., 145 F.3d 1159,

1174-75 (10th Cir. 1998)).   The Tenth Circuit treats a plaintiff's failure to timely exhaust

administrative remedies not "as a jurisdictional issue, [but] rather . . . as an affirmative defense to

be raised by [defendants]."  DeWalt v. Meredith Corp., 288 F. App'x at 490.

      Though not jurisdictional, the time limit is not an arbitrary barrier.  It is designed to give an

agency timely notice of potentially illegal conduct, to discover and correct its own errors, and

possibly to conciliate the claim.  See Sampson v. Civiletti, 632 F.2d at 863.  An employee who fails

to comply with the limitation period is barred from seeking judicial relief in federal court, absent

a defense of equitable tolling.  See Davis v. United States Postal Serv., 142 F.3d at 1339; Wilson

v. West, 962 F. Supp. 939, 944 (1997).

### a.      **Exceptions of Equitable Tolling Are Narrowly Construed.**

      "Equitable exceptions, however, have been narrowly construed."  Harms v. I.R.S., 321 F.3d

1001, 1006 (10th Cir. 2003).  See Montoya v. Chao, 296 F.3d 952, 957 (10th Cir. 2002)(stating that

"federal courts have typically extended equitable relief only sparingly").  The Tenth Circuit "has

generally recognized equitable tolling of Title VII periods of limitation only if circumstances rise

to the level of active deception which might invoke the powers of equity to toll the limitations

period."  Montoya v. Chao, 296 F.3d at 957.  See Godwin v. Sw. Research Inst., 237 F. App'x 306,

307 (10th Cir. 2007)("Our precedent requires that an ADEA plaintiff demonstrate 'active deception'

on the part of an employer, the EEOC, or the court."); Biester v. Midwest Health Servs., Inc., 77

F.3d 1264, 1269 n.2 (10th Cir. 1996)(noting in a Title VII case that "extraordinary circumstances"

are "necessary to justify equitable tolling under established Tenth Circuit precedent.").  "Equitable

tolling may be appropriate where a plaintiff has been lulled into inaction by an employer's

'deliberate design . . . or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.'" Al-Ali v. Salt Lake Cmty. Coll., 269 F. App'x 842, 847 (10th Cir. 2008)(quoting Hulsey v. Kmart, Inc., 43 F.3d 555, 557 (10th Cir. 1994)).  Equitable tolling "is not warranted where an employee is aware of all of the facts constituting discriminatory treatment but lacks direct knowledge of the employer's subjective discriminatory purpose." Bennett v. Coors Brewing Co., 189 F.3d 1221, 1235 (10th Cir. 1999)(citation omitted).

<b>b.</b>     <b>Equitable Tolling Is Within the District Court's Discretion.</b>

The decision whether to equitably toll the limitations period rests within the district court's sound discretion.  See Purrington v. Univ. of Utah, 996 F.2d 1025, 1030 (10th Cir. 1993).  In Castaldo v. Denver Public Schools, 276 F. App'x 839 (10th Cir. 2008), the Tenth Circuit found that the district court did not abuse its discretion when it chose not to apply equitable tolling to the plaintiff's EEOC charge when the plaintiff alleged: (i) that his employer did not post notices regarding the filing of EEOC charges; (ii) that he was too incapacitated by his shoulder injuries to file an EEOC charge; and (iii) that he was proceeding pro se.  See 276 F. App'x at 841.  The Tenth Circuit found no error in the district court's conclusion that the failure to post EEOC notices was not a sufficient justification for equitable tolling.  See 276 F. App'x at 841.  See also Wilkerson v. Siegfried Ins. Agency, Inc., 683 F.2d 344, 347 (10th Cir. 1982)(holding that "the simple failure to post . . . notices, without intent to actively mislead the plaintiff respecting the cause of action, does not extend the time within which a claimant must file his or her discrimination charge").  The district court noted that the plaintiff did not allege that his employer intended to actively deceive him by failing to post notices about filing EEOC charges.  See Castaldo v. Denver Pub. Schs., 276 F. App'x at 841.  The Tenth Circuit also concluded that the statements in the plaintiff's EEOC charge revealed that it was not his alleged incapacity that prevented him from filing a timely charge, but

-19-

rather the fact that he was unaware of his obligation to do so until he consulted an attorney.  See 276

F. App'x at 841.  The Tenth Circuit found that "his ignorance of the filing requirement does not

entitle him to equitable tolling."  276 F. App'x at 842.  Finally, the Tenth Circuit upheld the district

court's finding that the plaintiff's pro-se status did not justify equitable tolling, because the plaintiff

had the ability to contact an attorney but elected not to do so until well after the expiration of the

filing period.  See 276 F. App'x at 842.

   In Godwin v. Southwest Research Institute, the Tenth Circuit held that the district court did

not abuse its discretion in refusing to employ equitable tolling when the plaintiff misaddressed his

EEOC submission, which arrived forty-four days after the time limit had expired.  See 237 F. App'x.

at 307-08.  In Baker v. Perfection Hy-Test, No. 95-6091, 1996 WL 1162 (10th Cir. Jan. 2, 1996),

the Tenth Circuit held that there was no active deception sufficient to toll the 300-day deadline

where the plant manager of the plaintiff's employer told the plaintiff, after his demotion, that

"restructuring was happening 'all over the country,' that plaintiff 'couldn't sue,' [and] that he might

try but he 'wouldn't get to first base.'"  1996 WL 1162, at * 2.  The Tenth Circuit found that the

statements "at most expressed an opinion concerning plaintiff's likelihood of success."  1996 WL

1162, at *7.

## ANALYSIS

   The Court finds that Noland has exhausted his administrative remedies for his racial

discrimination, religious discrimination, hostile work environment, and retaliation claims, because,

given the factual allegations in the EEOC Charge, the fact that Noland checked boxes in the EEOC

charge for race, color, religion, and retaliation discrimination, and Noland's statement that he was

subjected to a hostile work environment, an administrative investigation of Noland's racial

discrimination, religious discrimination, hostile work environment, and retaliation claims could

reasonably be expected to follow the charge of discrimination.

## I.  NOLAND DID NOT EXHAUST ANY CLAIM THAT HE HAS UNDER TITLE VII OF NEPOTISM.

Even if Noland's claim regarding nepotism states a claim under Title VII, Noland did not exhaust his administrative remedies for this claim, because the EEOC Charge does not contain any allegations regarding an incident of discrimination involving nepotism.  The EEOC Charge instead relates to an incident in which Noland was placed on administrative leave.  Under National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), each discrete act of discrimination must be administratively exhausted.  "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 114 (internal citations and quotations omitted). Accordingly, the Court need not address whether Noland's claim regarding nepotism states a claim under Title VII, because he did not exhaust his administrative remedies for this claim.  Therefore, if Noland could state a claim regarding nepotism under Title VII, he did not exhaust his administrative remedies for this claim.

## II.  NOLAND EXHAUSTED HIS ADMINISTRATIVE REMEDIES FOR HIS RACIAL DISCRIMINATION, RELIGIOUS DISCRIMINATION, AND RETALIATION CLAIMS.

The City Defendants do not contest that Noland exhausted his retaliation claim.  See Trial Brief at 4 ("Accordingly, the only exhausted claim in his EEOC Complaint was for retaliation."). The City Defendants do not address Noland's claims for racial discrimination and religious discrimination under Title VII in their briefing, other than stating that the only exhausted claim in Noland's EEOC Charge is for retaliation.

The Court finds that Noland has exhausted his racial discrimination claim, his religious discrimination claim, and his retaliation claim, because, given the factual allegations in the EEOC Charge, and that Noland checked boxes in the EEOC Charge for race, color, religion, and retaliation discrimination, an administrative investigation of Noland's racial discrimination, religious discrimination claim, and retaliation claim could reasonably be expected to follow the charge of discrimination.

Courts "liberally construe charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim." Jones v. United Parcel Serv., Inc., 502 F.3d at 1186 (citations omitted).  A court's inquiry, however,

> is limited to the scope of the administrative investigation that can reasonably be expected to follow from the discriminatory acts alleged in the administrative charge. In other words, the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim; this follows from the rule that each discrete incident' of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted.

Jones v. United Parcel Serv., Inc., 502 F.3d at 1186 (internal quotation marks and citations omitted).

In Jones v. United Parcel Services, Inc., the Tenth Circuit agreed with the district court's conclusion that Jones exhausted his retaliation claim and disability discrimination claim.

> Although Mr. Jones did not check the box on page two indicating disability as a basis for the alleged discrimination, he did check the box for disability on page three in response to the question: "Are you aware of statements made by management officials showing prejudice toward you for any of the following reasons[?]" In addition, the instructions at the bottom of page three directed Mr. Jones to complete Section C of the questionnaire if he believed that he was "not hired because of a disability," and Mr. Jones filled out Section C. Furthermore, in the narrative portion of the form, Mr. Jones described the discriminatory conduct as follows: "Injured on 10/6/03. On 12-4/-3 Dr. Stechschulte placed permanent restriction on me, On 2-3-04 Dr. Michael J. Poppa release[d] me to return to full duty, On 2-9-04 Dr. Legler release[d] me to return to full duty. After UPS contacted Dr. Legler, Dr. Legler changed restriction on 2/9/04." The charge therefore contains allegations that UPS interfered with a medical evaluation in order to ensure Mr. Jones was not released to return to full-duty work. We agree with the District Court

that these allegations should have triggered an inquiry into whether UPS viewed Mr. Jones as disabled. In other words, an investigation into whether UPS did not return Mr. Jones to work because it regarded him as disabled "can reasonably be expected to follow the charge." MacKenzie, 414 F.3d at 1274. Mr. Jones's claim of disability discrimination is therefore within the scope of the charge.

. . . .

Although Mr. Jones did not check the box for retaliation on page two of the questionnaire, he did check the box for retaliation as a basis for discrimination on page three of the questionnaire. Furthermore, as noted above, the text of the charge describes the conduct underlying Mr. Jones's claim that UPS did not return him to work because it regarded him as disabled. His retaliation claim is based on these facts as well. He claims that UPS acted with a retaliatory, as well as a discriminatory, motive when it did not permit him to return to work despite releases from two doctors. The facts contained in the charge therefore describe the conduct underlying both his discrimination and his retaliation claims. Thus, given the factual allegations contained in the charge and the fact that Mr. Jones checked a box for retaliation, an administrative investigation of Mr. Jones's retaliation claim "can reasonably be expected to follow the charge of discrimination."

502 F.3d at 1186-87.

In Noland's EEOC Charge, in the section labeled "Discrimination Based On", Noland checked the boxes for race, color, religion, and retaliation. Furthermore, the text of Noland's EEOC Charge states:

[O]n or about June 8, 2006, I was placed on Administrative Leave and informed it was to conduct a confrontation with a coworker. I believe an investigation was never conducted. The confrontation we had was only "words" and I know of others who have come to fisticuffs [sic] who have been sent to mediation and not placed on Administrative Leave. In addition, the City of Albuquerque passed along information to Bernalillo County which prevented me from getting hired when the Detention Center was placed under the management of the County. During my employment with the City of Albuquerque, I complained verbally to supervisors about discriminatory and racist comments such as references to the "cotton fields" and asking me if I'm Muslim or a member of the Taliban, which were made to me by coworkers.

I believe I was discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, because of my race (Black), color, religion, and in retaliation because I complained about discrimination in the workplace.

EEOC Charge at 1.  As in <u>Jones v. United Parcel Services, Inc.</u>, where the Tenth Circuit found that

the plaintiff's claim for disability discrimination was within the scope of the charge when the

plaintiff checked a box for disability and the charge contained allegations that UPS interfered with

a medical evaluation to ensure that the plaintiff was not released to return to full-duty work, Noland

checked the boxes for religious, race, and color discrimination, and the charge contained allegations

that he was treated differently from his coworkers when he was placed on administrative leave for

a confrontation with a coworker, because of his race, color, or religion.  The Court thus believes that

Noland's claims for racial discrimination and religious discrimination are within the scope of the

charge, and that Noland exhausted his administrative remedies for these claims.  Furthermore, as

in <u>Jones v. United Parcel Services, Inc.</u>, where the Tenth Circuit found that the plaintiff exhausted

his retaliation claim when he checked a box for retaliation as a basis for discrimination, and alleged

that UPS acted with a retaliatory motive when it did not permit him to return to work despite

doctors' releases, Noland checked the box for retaliation, alleged that he complained to supervisors

about discriminatory or racist comments his coworkers made to him, and alleged that he was treated

differently from his coworkers when he was placed on administrative leave for a confrontation with

a coworker in retaliation for his complaints about discrimination in the workplace.  The Court thus

believes that Noland's retaliation claim is within the scope of the charge and that Noland has

exhausted his administrative remedies for this claim.

### III.   NOLAND EXHAUSTED HIS ADMINISTRATIVE REMEDIES FOR HIS HOSTILE WORK ENVIRONMENT CLAIM.

To bring a hostile work environment claim before the Court, Noland must have first

presented the claim to the EEOC.  "A failure to file an administrative . . . claim before bringing suit

is jurisdictionally fatal."  <u>Mitchell v. City and County of Denver</u>, 112 F. App'x at 666.  The Court

must determine if a hostile work environment claim "can reasonably be expected to follow the charge of discrimination submitted to the EEOC." MacKenzie v. City & County of Denver, 414 F.3d at 1274. "We liberally construe charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim." Jones v. United Parcel Serv., Inc., 502 F.3d at 1186. "This more lenient pleading standard contemplates the fact that administrative charges of unlawful employment practices are regularly filled out by employees who do not have the benefit of counsel." Mitchell v. City and County of Denver, 112 F. App'x at 667. "[T]he charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim." Jones v. United Parcel Serv., Inc., 502 F.3d at 1186. The Court's review of Noland's EEOC Charge reveals that Noland presented information that could reasonably be expected to lead the EEOC to investigate a hostile work environment claim.

In Mitchell v. City and County of Denver, the Tenth Circuit rejected a plaintiff's contention that "his EEOC filing c[ould] be fairly construed to include a hostile work environment/racial harassment claim, and therefore, all allegations in his civil suit [we]re deemed included in his administrative charge." 112 F. App'x at 667. The Tenth Circuit looked to the language of the EEOC charge to determine whether a hostile work environment claim could "reasonably be expected to grow out of the charge that was made." 112 F. App'x at 667.

> To determine whether the hostile work environment claim is reasonably related to the administrative charge, we look first to the language of the charge itself. . . . The form contains several sections with boxes that may be checked or blanks that may be filled in by the complainant. In the section titled "Cause of Discrimination," Mitchell checked the boxes marked "race" and "retaliation." In the section titled "Date of Discrimination," he checked the box marked "continuing action." However, in that same section, he filled in the blanks marked "earliest date" of discrimination and the "latest date" of discrimination with the same date, September 4,1996. In the section provided for his statement of "Personal Harm," Mitchell stated: "on or about August 4, 1996, and continuing" Denver Water "fail[ed] to promote me . . . because of my race/African American . . . and in retaliation for

engaging in protected activity." He supported this claim in his "Discrimination Statement," alleging: (1) he had always been a "satisfactory to above-satisfactory" employee, (2) three Caucasian males with less seniority and experience had been promoted in the last six months, (3) throughout this period he had consistently complained to his superiors regarding what he perceived to be discriminatory treatment, (4) he had filed a previous charge of discrimination around 1986, (5) Funk allegedly stated, "this nigger . . . ain't going anywhere as long as he works for me," and (6) he remained employed "at a lesser step than he should be." Finally, he requested relief in the form of a promotion to Inspector II-Step 9, back pay and benefits, and compensatory and punitive damages.

112 F. App'x at 667. Reading the EEOC Charge liberally, the Tenth Circuit concluded that "the investigation of [the plaintiff's] 'failure to promote' claim could not reasonably be expected to lead to a hostile work environment/racial harassment claim." 112 F. App'x at 667. The Tenth Circuit explained that the plaintiff did not "simply neglect[] to attach a legal label to his underlying factual allegations"; rather, "[n]othing in Mitchell's EEOC complaint indicates a hostile work environment." 112 F. App'x at 667-68. The plaintiff failed to "allege facts indicating a workplace 'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" 112 F. App'x at 668 (quoting Davis v. United States Postal Serv., 142 F.3d at 1341).

Noland is an African-American. In his EEOC Charge, Noland did not check the box marked "continuing action," and he listed the dates discrimination took place as June 8, 2006 to June 8, 2006. EEOC Charge at 1. In the text of the charge, however, Noland stated that, "[d]uring my employment at the Detention Center I have been subject to a hostile work environment." EEOC Charge at 1. He further stated that, "[d]uring my employment with the City of Albuquerque, I complained verbally to supervisors about discriminatory and racist comments such as references to the 'cotton fields' and asking me if I'm Muslim or a member of the Taliban, which were made to me by coworkers." EEOC Charge at 1. "Liberally construing EEOC complaints requires courts to

look beyond the formalities of the complaint form." West v. N.M. Taxation and Revenue Dept., No. CIV 09-0631 JB/CEG, 2010 WL 4927937, at *12 (D.N.M. Oct. 31, 2010).  Although Noland listed the dates of discrimination as June 8, 2006 to June 8, 2006, the narrative of the EEOC Charge complains of a hostile work environment and discriminatory and racist comments over a period of time.  Moreover, although Noland did not check the "continuing action" box contained in the "Date(s) Discrimination Took Place" section of the EEOC Charge, the text of his EEOC Charge clearly states that he was subjected to a hostile work environment.  In Jones v. United Parcel Services, Inc., the Tenth Circuit stated: "The failure to mark a particular box creates a presumption that the charging party is not asserting claims represented by that box.  The presumption may be rebutted, however, if the text of the charge clearly sets forth the basis of the claim." 502 F.3d at 1186 (internal citations omitted).  Unlike Mitchell v. City and County of Denver, where the Tenth Circuit rejected Mitchell's contention that his EEOC charge could be fairly construed to include a hostile work environment/racial harassment claim, because Mitchell did not allege facts indicating a workplace permeated with discriminatory intimidation, ridicules, or insults, and because "[n]othing in Mitchell's EEOC complaint indicates a hostile work environment,"  112 F. App'x at 667-68, in this case, Noland specifically alleges that he was subjected to a hostile work environment and alleges that his coworkers made discriminatory and racist comments referring to cotton fields, the Taliban, and Muslim faith.  Given these details in the EEOC Charge, and Noland's statement that he was subjected to a hostile work environment, a reasonable reader would understand the Charge to assert a hostile work environment claim.[2]  See MacKenzie v. City & County of Denver, 414 F.3d

---

[2] In the Trial Brief, the City Defendants clarified their statements in the PTO that Noland failed to "exhaust administrative remedies for claims concerning conduct predating the conduct complained of in his EEOC complaint that gave rise to this lawsuit," and that Noland "failed to exhaust his administrative remedies for claims concerning conduct that predated the conduct

at 1274 (stating that the Court must determine if a hostile work environment claim "can reasonably be expected to follow the charge of discrimination submitted to the EEOC"); Jones v. United Parcel Serv., Inc., 502 F.3d at 1186 ("We liberally construe charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim.").  The Court thus finds that Noland exhausted his administrative remedies for his hostile work environment claim.

**IT IS ORDERED** that Plaintiff James S. Noland has exhausted his racial discrimination, religious discrimination, hostile work environment, and retaliation claims based on Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17.

_____
UNITED STATES DISTRICT JUDGE

_____

complained of in the EEOC complaint." PTO at 4, 7.  In their Trial brief, the City Defendants argue that, in his EEOC Charge, Noland gave only one date for discrimination, June 8, 2006, Noland's statement that, during his employment, he was subjected to discriminatory and racist comments, cannot form the basis for a discrete claim of hostile work environment. "Hostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 115 (internal citations and quotations omitted).  An "unlawful employment practice" that constitutes a hostile work environment thus cannot be said to occur on any particular day, but rather occurs over a series of days or years.  Id. (citing Harris v. Forklift Systems, Inc., 510 U.S. at 21).  Accordingly, so long as one of the incidents included within the claim of hostile environment occurred within the prescribed time limit, other conduct that occurred outside of the proscribed time period, but contributing to the hostile work environment, is not time barred.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 105 (holding "that consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period"); West v. Norton, 376 F. Supp. 2d at 1129.  Noland complained of an allegedly discriminatory act within the prescribed time limit.  The Court thus finds that discriminatory conduct that occurred outside of the proscribed time limit, which contributed to the hostile work environment, is thus not time barred.

*Parties and counsel:*

James S. Noland
Corrales, New Mexico

> *Plaintiff pro se*

Marcus J. Rael, Jr.
Erika E. Anderson
Robles, Rael & Anaya, P.C.
Albuquerque, New Mexico

> *Attorneys for Defendants Bernalillo County Board of Commissioners, Bernalillo County Metropolitan Detention Center, Mike Sisneros, Ronald Torres, Henry Perea, Matt Candelaria, Juan Chacon, Matt Elwell, Paul Salcido, Erin Worsham, Danny Sisneros, and Jose Hernandez*

Michael I. Garcia
Albuquerque City Attorneys Office
Albuquerque, New Mexico

> *Attorneys for Defendants City of Albuquerque, Harry Tipton, Donald Crutchfield, and Ernest Wickham*